**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| MORRIS ROUTING TECHNOLOGIES, LLC, *Plaintiff*, v. | |
| AT&T ENTERPRISES LLC, et al, | Case No. 4:24-cv-623-SDJ |
| SAMSUNG ELECTRONICS CO., LTD., et al, | Case No. 4:24-cv-624-SDJ |
| T-MOBILE USA, INC., et al, | Case No. 4:24-cv-625-SDJ |
| VERIZON COMMUNICATIONS, INC., et al, *Defendants*. | Case No. 4:24-cv-626-SDJ **Jury Trials Demanded** |

**DEFENDANTS' BRIEF IN SUPPORT OF
<u>FOCUSING PATENT CLAIMS AND PRIOR ART</u>**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND ................................................................................................................. 2

III. LEGAL STANDARD .......................................................................................................... 3

IV. ARGUMENT ....................................................................................................................... 4

    A. The Number of Patents and Claims Asserted Makes Claim Narrowing at This Stage Necessary and Appropriate. ................................................................. 5

    B. The Complexity of the Patents and Claims Further Justifies Early Claim Narrowing. ............................................................................................................. 9

    C. Defendants' Proposal Appropriately Balances the Needs of the Case. ................ 10

V. CONCLUSION .................................................................................................................. 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Headwater Rsch. LLC v. Verizon Commc'ns Inc.*,
  No. 2:23-CV-00352-JRG-RSP (E.D. Tex. May 29, 2024) .................................................. 8, 11

*In re Katz Interactive Call Processing Pat. Litig.*,
  639 F.3d 1303 (Fed. Cir. 2011) ...................................................................................... passim

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) .................................................................................................................. 6

*Midwest Athletics & Sports All., LLC v. Xerox Corp.*,
  No. 6:19-CV-06036-EAW-JWF, 2020 WL 10458196 (W.D.N.Y. Feb. 3, 2020) ...................... 4

*Oasis Rsch., LLC v. Adrive, LLC*,
  No. 4:10–CV–00435, 2011 WL 7272473 (E.D. Tex. Sept. 13, 2011) .......................... 3, 4, 7, 11

*Stamps.com Inc. v. Endicia, Inc.*,
  437 F. App'x 897 (Fed. Cir. 2011) ............................................................................................ 4

*Tech. Licensing Corp. v. Blackmagic Design Pty Ltd.*,
  No. 13-cv-05184-SBA (MEJ), 2015 WL 307256 (N.D. Cal. Jan. 22, 2015) ......................... 3, 6

*Unified Messaging Sols. LLC v. Facebook, Inc.*,
  No. 6:11cv120, 2012 WL 11606516 (E.D. Tex. July 12, 2012) .......................................... 6, 11

*Universal Elecs. Inc. v. Roku Inc.*,
  No. SACV 18-1580 JVS (ADx), 2019 WL 1878351 (C.D. Cal. Mar. 14, 2019) ..................... 11

**Other Authorities**

E.D. Tex. Gen. Order No. 13-20, Local Rules Advisory Comm. Comment.
  (Oct. 20, 2013) ........................................................................................................................ 11

John R. Allison, Mark A. Lemley & Joshua Walker,
  *Extreme Value or Trolls on Top? The Characteristics of the Most-Litigated Patents*, 158 U.
  Penn. L. Rev. 1 (2009) ........................................................................................................... 10

**I.      INTRODUCTION**

At the Case Management Conference on February 5, 2025, the Court requested supplemental briefing on claim narrowing in these patent infringement actions. AT&T, Samsung, T-Mobile, and Verizon (collectively, the "Defendants") submit this brief in response to that request. Defendants respectfully request the Court to enter an order requiring Morris Routing to narrow the asserted claims to no more than 60 claims per Defendant at the P.R. 3-1 deadline for Disclosure of Asserted Claims and Infringement Contentions.

Requiring Plaintiff to narrow claims—and Defendants to narrow prior art—now is warranted for case management, judicial efficiency, and fairness reasons. And the narrowing can be achieved without prejudicing Plaintiff's ability to prosecute the claims it deems to be most appropriate by allowing Morris Routing to assert additional claims later in the case with a showing of good cause.

Morris Routing asserts 32 different patents with nearly 2,000 claims collectively against Defendants. At the CMC, Morris Routing said that it intends to assert 280 claims against each Defendant in its P.R. 3-1 infringement contentions—more than 1,100 unique claims across the four cases. Morris Routing has asserted an excessive number of patents and claims, seemingly without making considered substantive distinctions as to which patents to assert against which Defendant.

Given the complexity of the issues raised by each of the patents and claims, early claim narrowing is necessary and appropriate to conserve judicial and party resources. This approach is consistent with procedures adopted in analogous cases in the Eastern District of Texas and other districts and has been approved by the Federal Circuit. In particular, the *Katz* decision from the Federal Circuit is instructive as to an appropriate approach to claim narrowing under remarkably

1

similar circumstances. *In re Katz Interactive Call Processing Pat. Litig.*, 639 F.3d 1303, 1310–13 (Fed. Cir. 2011).

## II. BACKGROUND

In its original July 8, 2024 complaints, Morris Routing asserted seven patents against AT&T, seven patents against Samsung, nine patents against T-Mobile, and eight patents against Verizon. Altogether Morris Routing accused the Defendants of infringing 31 distinct patents with no overlap between the patents asserted against each Defendant. On October 4, 2024, Morris Routing filed amended complaints, adding the same additional patent against each Defendant. The table below reflects the total number of patents and claims asserted against each Defendant:

| Defendant | # of Patents | # of Claims |
|---|---|---|
| AT&T | 8 | 436 |
| Samsung | 8 | 483 |
| T-Mobile | 10 | 488 |
| Verizon | 9 | 623 |
| **Total** | **32 distinct patents** | **1,970 distinct claims** |

The one overlapping patent has only 20 claims. Accounting for that one overlapping patent, Morris Routing has asserted a total of **32 distinct patents** and **1,970 distinct claims** against the Defendants. Despite asserting very similar infringement allegations against the Defendants in its complaints, Morris Routing selected unique patents and claims to assert against each of the four Defendants, multiplying the size and complexity of these lawsuits.

Given this unusually large number of claims, the Defendants requested during the Rule 26(f) conference that Morris Routing narrow the number of claims asserted. Morris Routing said that early narrowing would be a nonstarter, contending that "it is critical to allow the case to proceed through the standard discovery process before selecting the limited set of claims that will

proceed." *See, e.g.*, AT&T Rule 26(f) Joint Report, Dkt. 35 at 2. Rule 26(f) Joint Reports reflecting this dispute were entered in all four cases from January 9–14, 2025.

The day before the CMC, responding to yet another defense inquiry about limiting, Morris Routing proposed that it would assert 280 claims per Defendant. D. Dahlgren 02/04/2025 email.[1] Considering the extraordinary burden of preparing invalidity contentions and claim construction arguments for over 1,100 claims, Defendants did not agree to that proposal. J. Baxter 02/05/2025 email. Defendants instead proposed that Morris Routing should provide infringement contentions for no more than 60 claims per Defendant, for a total of 240 claims. *Id.* Morris Routing rejected that proposal. D. Dahlgren 02/05/2025 email. The parties presented their arguments to the Court at the CMC on February 5, 2025.[2]

## III.   LEGAL STANDARD

"[C]ourts in the Eastern District of Texas have required plaintiffs to limit the number of asserted claims in cases for patent infringement when the number of claims is so large as to make the case inefficient and unmanageable." *Oasis Rsch., LLC v. Adrive, LLC*, No. 4:10-CV-00435, 2011 WL 7272473, at *2 (E.D. Tex. Sept. 13, 2011) (Mazzant, J.) (internal quotations omitted) (collecting cases). Courts in other districts also commonly limit the number of asserted claims in patent cases. *See Tech. Licensing Corp. v. Blackmagic Design Pty Ltd.*, No. 13-cv-05184-SBA (MEJ), 2015 WL 307256, at *2 (N.D. Cal. Jan. 22, 2015) ("[D]istrict courts possess the authority

---

[1] Mr. Dahlgren confirmed Morris Routing's intent to assert 280 claims per Defendant at the Case Management Conference hearing. *See* Transcript of Rule 16 Management Conference at 29:2–7.
[2] At the CMC, the Court asked whether claim construction hearings would be consolidated in these cases. Defendants will agree to a consolidated claim construction process. Given the minimal overlap due to Plaintiff's scattered allegations, however, some of the efficiencies usually gained by consolidated claim construction processes may not exist here.

and discretion to reasonably limit the number of claims asserted in patent infringement actions."); *Midwest Athletics & Sports All., LLC v. Xerox Corp.*, No. 6:19-CV-06036-EAW-JWF, 2020 WL 10458196, at *7 (W.D.N.Y. Feb. 3, 2020) ("There is no question the District Court has the authority to limit the number of [patent] claims asserted by the plaintiff.").

The Federal Circuit has embraced district courts' authority to impose early, reasonable limits on the number of claims asserted. *See In re Katz*, 639 F.3d at 1310–13 (affirming district court decision to narrow claims); *Stamps.com Inc. v. Endicia, Inc.*, 437 F. App'x 897, 902–03 (Fed. Cir. 2011) (affirming district court decision to deny motion to pursue additional claims). Generally, due process concerns are mitigated by allowing the plaintiff to show good cause to assert additional claims after narrowing. *See In re Katz*, 639 F.3d at 1311–12 (finding that claim narrowing did not violate due process because plaintiff could reintroduce claims for good cause); *see also Oasis Rsch.*, 2011 WL 7272473, at *2 (Mazzant, J.) (requiring plaintiff to narrow claims with leave to add claims on showing good cause).

## IV. ARGUMENT

Claim narrowing is necessary and appropriate at this stage in the cases. Plaintiff's proposal to "narrow" to 280 per Defendant is still well beyond the number of claims asserted in typical patent infringement actions. Assertion of such a high number of claims is precisely the type of situation that other courts have found warrant early narrowing. The complexity of the patents and claims asserted in these cases further exacerbates the burden on the Court and Defendants. The Defendants' proposal for claim narrowing strikes an appropriate balance between efficient case management and the Plaintiff's right to pursue its patent infringement claims.

### A. The Number of Patents and Claims Asserted Makes Claim Narrowing at This Stage Necessary and Appropriate.

Without an immediate and meaningful reduction of the number of asserted claims, Defendants face severe prejudice. Each Defendant currently faces over 400 claims across at least eight patents. The burden of preparing invalidity contentions and claim construction arguments for such a large number of claims is substantial. The problem is not solved by Plaintiff's offer to "reduce" claims to 280 claims per Defendant—a narrowing that leaves over 1,100 claims intact; that still imposes an unreasonable burden on Defendants. Even if preparing invalidity claim charts took only 10 attorney hours per claim[3], each Defendant would face 2,800 attorney hours just to create prior art claim charts for the 280 claims, the vast majority of which will be dropped from the case within a few months.

Plaintiff's shotgun approach may impact the Court, too. With such a large number of claims, the quality and specificity of Morris Routing's infringement contentions will likely be in dispute. Such disputes may require the Court's intervention. All of this would be an enormous waste of time for the parties and the Court, especially since Morris Routing will drop over 88% of these claims within a few months.[4]

*In re Katz* is very instructive. There, the Federal Circuit confirmed that district courts have the authority to require pre-discovery claim narrowing in patent cases with a large number of claims. *In re Katz*, 639 F.3d at 1309–13. The plaintiff in *Katz* asserted 31 patents and 1,975

---

[3] Ten attorney hours per asserted claim is a low estimate considering that invalidity contentions typically include at least five invalidity charts per asserted claim, each representing alternative invalidity arguments based on different prior art references.

[4] Morris Routing has agreed to limit the asserted claims to 32 total claims at the close of claim construction discovery.

5

claims. *Id.* at 1309. The district court ordered the plaintiff to narrow to no more than 40 claims per Defendant before discovery, with further claim narrowing after discovery. *Id.* The Federal Circuit affirmed this decision to require pre-discovery claim narrowing. *Id.* at 1311–12; *see also Tech. Licensing Corp.*, 2015 WL 307256, at *2 (In *Katz*, "the Federal Circuit implicitly recognized that courts may, in some circumstances, select a number of representative claims prior to discovery.") (emphasis added).

The Federal Circuit rejected the *Katz* plaintiff's argument that the narrowing order denied Katz due process. *In re Katz*, 639 F.3d at 1311. The court noted that, to make a due process claim, the plaintiff would have to show that the risk of being denied property rights outweighs the costs associated with a substitute procedure. *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). The district court's order narrowing the claims included a proviso allowing the plaintiff to reintroduce claims on a showing that the claims raised unique issues. *In re Katz*, 639 F.3d at 1309. Since the court included a procedure for unique claims to be brought back after narrowing, the court concluded there was no significant risk that the plaintiff would be denied property rights. *Id.* at 1311–12. Therefore, the claim narrowing order did not deny the plaintiff due process. *Id.*

District court judges in this District and others have narrowed claims early following the *Katz* approach. *See Tech. Licensing Corp.*, 2015 WL 307256, at *3 (collecting cases). As one judge in this District said, "[n]arrowing the case at an earlier stage will serve to reduce the overall costs of the litigation by eliminating needless discovery regarding issues that will likely be dropped prior to trial, and allow the Court to dedicate its resources to the truly dispositive and meritorious issues." *Unified Messaging Sols. LLC v. Facebook, Inc.*, No. 6:11cv120, 2012 WL 11606516, at *1 (E.D. Tex. July 12, 2012) (Davis, J.).

This case presents the Court with remarkably similar facts to *Katz*. Morris Routing has asserted 1,970 claims across 32 different patents. Defendants request a narrowing to **60** claims per Defendant. This is well within the Court's authority to order—the *Katz* court affirmed an order narrowing from 1,975 claims to 40 per Defendant. Defendants also propose a proviso allowing Morris Routing to reintroduce additional claims upon a showing that they raise unique issues, which mitigates any due process or prejudice concerns. *See, e.g.*, *Oasis Rsch.*, 2011 WL 7272473, at *2 (Mazzant, J.) (requiring plaintiff to narrow claims with leave to add claims on showing good cause).

At the CMC, Morris Routing relied on a footnote to argue against the Federal Circuit's holding in *Katz*. *See* Transcript of Rule 16 Management Conference at 8:10–9:2. The Federal Circuit noted in dicta it was "conceivable" that a claim selection order could come too early and unfairly prejudice the plaintiff. *In re Katz*, 639 F.3d at 1313 n.9. The Federal Circuit, however, explained that such a situation would arise only when the plaintiff shows how *specific* unselected claims raise unique issues. *Id.* at 1313. Here, Morris Routing points to nothing more than the general notion that claim narrowing is *per se* prejudicial. The Federal Circuit rejected that argument in *Katz*, finding "[t]hat sort of global claim of impropriety [] unpersuasive." *Id.*

Morris Routing's generalized assertion that it will be prejudiced by early narrowing, without identifying specific claims that present unique liability issues, should not be credited. At the CMC, Morris Routing claimed it needed to assert thousands of claims across 32 patents because "segment routing"—the technology allegedly underlying all the patents—can (according to Morris Routing) be implemented in both MPLS and IPv6. *See* Transcript of Rule 16 Management Conference at 9:8–19. But Morris Routing has failed to explain how <u>two</u> implementations create the need to assert over 1,100 claims. Morris Routing's arguments that some unspecified claims

7

are directed to different node types and different types of identifiers (*see* Transcript of Rule 16 Management Conference at 10:7–16) similarly fail to justify the number of claims Morris Routing has asserted. And none of Morris Routing's arguments justify its decision to assert unique claims against the individual Defendants rather than a common set of claims against the Defendants as a whole.

Morris Routing's reliance on the *Headwater* case to justify 280 claims per Defendant misconstrues what happened in that case. In *Headwater*, the court found that 281 claims were untenable and actually **justified** early narrowing beyond the Model Order. Order at 1, *Headwater Rsch. LLC v. Verizon Commc'ns Inc.*, No. 2:23-CV-00352-JRG-RSP (E.D. Tex. May 29, 2024), ECF No. 68 ("*Headwater* Order") ("The Court is persuaded that this case cannot proceed through claim construction with 281 asserted claims and that Plaintiff has not provided a reasonable alternative to the approach in the Model Order.") (emphasis omitted). Far from setting a target number of claims, the *Headwater* Order demonstrates that Morris Routing's proposal to assert 280 claims against each Defendant is unreasonable. Notably, the court promptly granted Verizon's request to narrow claims, with the order coming just 30 days after Verizon's motion.[5] *See id.*

In addition to the extraordinary number of claims it asserts in these cases, Morris Routing selected an almost entirely unique set of patents to assert against each Defendant. This is odd given that segment routing technology underlies the asserted claims in all four cases. Morris Routing alleged that Samsung, as an equipment manufacturer, is supposedly in a different position than the other Defendants. Transcript of Rule 16 Management Conference at 15:1–7. However,

---

[5] Thus, the *Headwater* case did not address the timing of the case narrowing, such as the propriety of narrowing the number of claims at the contentions stage or before discovery.

Morris Routing provided no explanation as to the differences relative to Samsung or between the other three carrier Defendants. Morris Routing lacks a principled explanation for why it asserted so many different patents across these cases, all directed to the same underlying technology and with only a single overlapping patent.

### B. The Complexity of the Patents and Claims Further Justifies Early Claim Narrowing.

The patents and claims involved in this case are unusually complex. According to one study, litigated patents have an average of just 24 claims. *See* John R. Allison, Mark A. Lemley & Joshua Walker, *Extreme Value or Trolls on Top? The Characteristics of the Most-Litigated Patents*, 158 U. Penn. L. Rev. 1, 16 (2009). In contrast, the patents in these cases have an average of over 61 claims. One patent alone, U.S. Patent No. 10,411,997, has **227 claims**. And the claims are exceptionally cumbersome. For example, dependent claim 45 of U.S. Patent No. 10,389,625 spans nearly five full columns of text. Many other claims are longer than one full column.

The specifications of the patents are also unusually complex. The patent specifications here have an average of over 81 columns. One patent, U.S. Patent No. 10,757,020, has a specification that runs **367 columns**.

Additionally, the patents cite an unusually large number of references. According to the same study cited above, litigated patents cite an average of 32 references. *See id.* In contrast, nearly all of the asserted patents here cite hundreds of references. As just one example, U.S. Patent No. 12,058,042—asserted against all four Defendants—cites **817 references**, over 25 times the average for litigated patents.

The complexity of the asserted patents exacerbates the prejudice Defendants would face without claim narrowing at this stage. Defendants will be forced to choose from among the

9

numerous asserted claims on which to focus their invalidity contentions and claim construction arguments. As this District has recognized, narrowing the number of asserted claims early "avoid[s] undue expense from briefing and arguing excess claim construction issues" and "lessen[s] the court's burden in preparing for, hearing, and ruling on claim construction issues." E.D. Tex. Gen. Order No. 13-20, Local Rules Advisory Comm. Comment., at ¶ 3 (Oct. 20, 2013). Here, Morris Routing's assertion of 1,100 claims will impede the parties' claim construction exchanges and threatens to inundate the Defendants' and Court's time with proposed constructions from hundreds of claims that Plaintiff will drop. Meanwhile, Morris Routing will be able to focus its efforts on the claims they know are likely to be among the maximum of 16 per case it will eventually select to take to trial. This prejudice can only be mitigated by requiring Morris Routing to narrow the claims at this stage.

### C.     Defendants' Proposal Appropriately Balances the Needs of the Case.

To enable manageable discovery without prejudicing Morris Routing, the Defendants propose entry of a modified version of the Court's Model Order that requires the parties to jointly narrow asserted claims and asserted prior art references at the contentions stage:

- At the deadline for Disclosure of Asserted Claims and Infringement Contentions under P.R. 3-1, Morris Routing shall serve a Preliminary Election of Asserted Claims that shall assert no more than 60 claims per Defendant.

- At the deadline for Invalidity Contentions under P.R. 3-3, each Defendant shall serve a Preliminary Election of Asserted Prior Art, each of which shall assert no more than 70 references.

This initial narrowing would be followed by further rounds of narrowing at the completion of claim construction discovery and before the service of expert reports, in accordance with the Court's Model Order.

To mitigate any due process concerns, Morris Routing can move the Court to add additional claims that present a distinct issue upon a showing of good cause.[6] This provision eliminates any prejudice that Morris Routing could face by being required to narrow its claims at this stage. *See In re Katz*, 639 F.3d at 1312; *Oasis Rsch.*, 2011 WL 7272473, at *2 (Mazzant, J.); *Universal Elecs. Inc. v. Roku Inc.*, No. SACV 18-1580 JVS (ADx), 2019 WL 1878351, at *4 (C.D. Cal. Mar. 14, 2019).

Morris Routing's proposal to narrow to 280 claims for each Defendant—over 1,100 total claims—does not adequately mitigate the prejudice faced by Defendants. Under the Court's Model Order, Morris Routing will eventually have to elect a maximum of just 16 claims for trial. Morris Routing has not identified a reason why they should be allowed to proceed with over 17 times that number of claims at this stage. Moreover, 280 claims for each Defendant are far out of line with the number of claims normally brought by plaintiffs or allowed by district courts when plaintiffs do bring an excessive number of claims, as evidenced by even the *Headwater* Order on which Morris Routing relies. *Headwater* Order (requiring early narrowing to 32 claims); *see also Oasis Rsch.*, 2011 WL 7272473, at *2 (Mazzant, J.) (31 claims); *Unified Messaging Sols.*, 2012 WL 11606516, at *1 (20 claims); *Universal Elecs.*, 2019 WL 1878351, at *5 (25 claims); *In re Katz*, 639 F.3d at 1312 (40 claims per Defendant). Defendants' proposal—allowing Morris Routing to assert 60 claims per Defendant—is more generous than any order requiring early narrowing that Defendants were able to identify. Accordingly, material claim narrowing in line with the Defendants' proposal is appropriate at this stage.

---

[6] Similarly, Defendants can move the Court to add additional prior art reference upon a showing of good cause.

11

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter their proposed schedule for narrowing Morris Routing's asserted claims and Defendants' prior art references.

Dated: February 21, 2025

Respectfully submitted,

| | |
|---|---|
| */s/ Timothy S. Durst* | */s/ Melissa R. Smith* |
| Timothy S. Durst, Bar No. 00786924<br>tdurst@omm.com<br>John Kappos, Bar No. 24130097<br>jkappos@omm.com<br>Jeffery Baxter, Bar No. 24006816<br>jbaxter@omm.com<br>**O'MELVENY & MYERS LLP**<br>2801 North Harwood Street, Suite 1600<br>Dallas, TX 75201-2692<br>Telephone: 972-360-1900<br>Facsimile: 972-360-1901<br><br>Brett J. Williamson (*pro hac vice*)<br>bwilliamson@omm.com<br>Cameron W. Westin (*pro hac vice*)<br>cwestin@omm.com<br>**O'MELVENY & MYERS LLP**<br>610 Newport Center Drive, 17th Floor<br>Newport Beach, CA 92660<br>Telephone: 949-823-6900<br>Facsimile: 949-823-6994<br><br>Khanh Nguyen Leon (pro hac vice)<br>kleon@omm.com<br>**O'MELVENY & MYERS LLP**<br>1625 Eye Street, NW<br>Washington DC, DC 20006<br>Telephone:  202-383-5300<br>Facsimile:  202-383-5414<br><br>Paige Hardy (pro hac vice)<br>phardy@omm.com<br>**O'MELVENY & MYERS LLP**<br>400 South Hope Street 18th Floor<br>Los Angeles, CA 90071<br>Telephone:  213-430-6000<br>Facsimile:  213-430-6407<br><br>***Attorneys for Defendants AT&T Enterprises, LLC, et al*** | Melissa R. Smith, Bar No. 24001351<br>melissa@gillamsmithlaw.com<br>**GILLAM & SMITH LLP**<br>303 South Washington Ave.<br>Marshall, TX 75670<br>Telephone: 903-934-8450<br>Facsimile: 903-934-9257<br><br>Gerald F. Ivey<br>gerald.ivey@finnegan.com<br>Parmanand K. Sharma (*pro hac vice* forthcoming)<br>parmanand.sharma@finnegan.com<br>Christopher T. Blackford (*pro hac vice* forthcoming)<br>christopher.blackford@finnegan.com<br>Daniel Chung (*pro hac vice* forthcoming)<br>daniel.chung@finnegan.com<br>Christina Ji-Hye Yang (*pro hac vice* forthcoming)<br>**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**<br>901 New York Avenue, N.W.<br>Washington, D.C. 20001-4413<br>Telephone: 202-408-4000<br><br>Charles H. Suh (*pro hac vice* forthcoming)<br>charles.suh@finnegan.com<br>**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**<br>1875 Explorer Street, 8th Floor<br>Reston, VA 20190-6023<br>Telephone: 571-203-2700<br><br>***Attorneys for Defendants Samsung Electronics Co., Ltd., et al*** |

| | |
|---|---|
| */s/ Katherine Q. Dominguez* | */s/ Timothy S. Durst* |
| Katherine Q. Dominguez (Lead Counsel), New York Bar No. 4741237 KDominguez@gibsondunn.com Josh A. Krevitt, New York Bar No. 2568228 JKrevitt@gibsondunn.com Brian A. Rosenthal, New York Bar No. 3961380 BRosenthal@gibsondunn.com **GIBSON, DUNN & CRUTCHER LLP** 200 Park Avenue New York, New York 10166 Telephone: 212-351-2490 Facsimile: 212-351-6390 | Timothy S. Durst, Bar No. 00786924 tdurst@omm.com John Kappos, Bar No. 24130097 jkappos@omm.com Jeffery Baxter, Bar No. 24006816 jbaxter@omm.com **O'MELVENY & MYERS LLP** 2801 North Harwood Street, Suite 1600 Dallas, TX 75201-2692 Telephone: 972-360-1900 Facsimile: 972-360-1901 |
| Albert Suarez IV, Texas Bar No. 24113094 ASuarez@gibsondunn.com **GIBSON, DUNN & CRUTCHER LLP** 2001 Ross Avenue, Suite 2100 Dallas, TX 75201 Telephone: 214-698-3151 Facsimile: 214-571-2986 | Brett J. Williamson (*pro hac vice*) bwilliamson@omm.com Cameron W. Westin (*pro hac vice*) cwestin@omm.com **O'MELVENY & MYERS LLP** 610 Newport Center Drive, 17th Floor Newport Beach, CA 92660 Telephone: 949-823-6900 Facsimile: 949-823-6994 |
| Melissa R. Smith, Texas Bar No. 2400135 Melissa@gillamsmithlaw.com **GILLAM & SMITH, LLP** 303 South Washington Avenue Marshall, Texas 75670 Telephone: 903-934-8450 Facsimile: 903-934-9257 *Attorneys for Defendant T-Mobile USA, Inc., et al* | Khanh Nguyen Leon (*pro hac vice*) kleon@omm.com **O'MELVENY & MYERS LLP** 1625 Eye Street, NW Washington DC, DC 20006 Telephone:  202-383-5300 Facsimile:  202-383-5414 Paige Hardy (pro hac vice) phardy@omm.com **O'MELVENY & MYERS LLP** 400 South Hope Street 18th Floor Los Angeles, CA 90071 Telephone:  213-430-6000 Facsimile:  213-430-6407 |

>Melissa R. Smith, Bar No. 24001351
>melissa@gillamsmithlaw.com
>**GILLAM & SMITH LLP**
>303 South Washington Ave.
>Marshall, TX 75670
>Telephone: 903-934-8450
>Facsimile: 903-934-9257
>
>Andrew Thompson (Tom) Gorham, Bar No. 24012715
>**GILLAM & SMITH, L.L.P.**
>102 N. College, Suite 800
>Tyler, Texas 75702
>Telephone: (903) 934-8450
>Facsimile: (903) 934-9257
>
>*Attorneys for Defendant Verizon Communications Inc. et al*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on February 21, 2025.

>*/s/ Melissa R. Smith*
>Melissa R. Smith

15