UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MORRIS ROUTING TECHNOLOGIES, LLC | § § § | |
| v. | § § | CIVIL NO. 4:24-CV-623-SDJ |
| AT&T INC., ET AL. | § § | |
| SAMSUNG ELECTRONICS CO., LTD., ET AL. | § § § | CIVIL NO. 4:24-CV-624-SDJ |
| T-MOBILE USA, INC., ET AL. | § § | CIVIL NO. 4:24-CV-625-SDJ |
| VERIZON COMMUNICATIONS, INC., ET AL. | § § § | CIVIL NO. 4:24-CV-626-SDJ |

# **MEMORANDUM OPINION AND ORDER**

Plaintiff Morris Routing Technologies, LLC ("Morris Routing") filed four patent infringement cases against major telecommunications network providers (the other three cases referred to as the "Related Cases").[1] Defendants in this case are several AT&T entities[2] ("AT&T"). This order concerns claim-narrowing issues applicable to this case and the Related Cases, and it applies to all four cases.

---

[1] The other three cases include the following: *Morris Routing Techs., LLC v. Samsung Elecs. Co.*, No. 24-CV-624 (E.D. Tex. July 8, 2024); *Morris Routing Techs., LLC v. T-Mobile USA, Inc.*, No. 24-CV-625 (E.D. Tex. July 8, 2024); *Morris Routing Techs., LLC v. Verizon Commc'ns, Inc.*, No. 24-CV-626 (E.D. Tex. July 8, 2024). To avoid unnecessary redundancy, and because this Order applies to all four cases, the Court uses the docket filings and citations for the AT&T case—4:24-CV-623—as representative for purposes of this Order. For clarity, these four cases remain separate and are not consolidated.

[2] The current Defendants include AT&T Enterprises LLC, AT&T Mobility LLC, AT&T Mobility LLC II, and AT&T Services, Inc.

1

Morris Routing's First Amended Complaint against AT&T alleges patent-infringement of eight patents related to improvements in the "routing, provisioning and transport of data packets across networks in the 2012 timeframe using SR over Multiprotocol Label Switching ("MPLS") and IPv6 data planes . . . which are now referred to as 'SR-MPLS' and 'SRv6' respectively." (Dkt. #16 ¶ 23). In each of the Related Cases, Morris Routing has filed a similar First Amended Complaint.

Between this case and the Related Cases, there are thirty-two asserted patents and about 2,000 asserted claims. Only one patent is commonly asserted across all four cases.[3] Yet all four First Amended Complaints contain substantively identical descriptions of (1) the patented inventions, (2) the advantages those inventions convey over the prior art, (3) the technological innovations disclosed by the asserted patents, and (4) the relevant industry standards that support Morris Routing's infringement claims. *Compare* (Dkt. #16 ¶¶ 22–63), *with* (Dkt. #12 ¶¶ 15–57), *Morris Routing Techs. v. Samsung Elecs. Co.*, No. 24-CV-624 (E.D. Tex. Oct. 9, 2024), *and* (Dkt. #14 ¶¶ 19–60), *Morris Routing Techs., LLC v. T-Mobile USA, Inc.*, No. 24-CV-625 (E.D. Tex. Oct. 4, 2024), *and* (Dkt. #19 ¶¶ 16–57), *Morris Routing Techs., LLC v. Verizon Commc'ns, Inc.*, No. 24-CV-626 (E.D. Tex. Oct. 4, 2024).

By Morris Routing's own pleadings, then, the asserted patents have significant technological overlap. Likewise, the prayers for relief in each First Amended Complaint are identical. Given the volume of asserted claims—no fewer than 400 claims in each case—"[a]ll Defendants agree[d] that case narrowing is necessary."

---

[3] U.S. Patent No. 12,058,042.

*E.g.*, (Dkt. #35 at 4). Defendants therefore requested a "narrowing of both claims and prior art," "at the stage of contentions." *E.g.*, (Dkt. #35 at 4).

Because of the significant technological overlap across the four cases, the Court held a joint scheduling conference to discuss the issue. (Dkt. #38). In the conference, the Court discussed entering an order to focus the asserted patent claims and prior-art references and to provide phased limits on those claims and references going forward. The parties then submitted briefing on the issue. The Court permitted one brief for Morris Routing and one brief for Defendants across all four cases.

After considering the briefing, (Dkt. #44, #45), the parties' arguments at the conference, and the relevant law, the Court finds that the following claim-narrowing schedule is appropriate for this case and the Related Cases:

| Deadline | Claim / Prior-Art Reference Limits |
|---|---|
| P.R. 3-1 Disclosure of Asserted Claims and Infringement Contentions (and P.R. 3-2 document production) to be served. | Plaintiff may assert no more than **sixty claims** in each case. |
| P.R. 3-3 Invalidity Contentions (and P.R. 3-4 document production) to be served. | Defendants may assert no more than **seventy prior-art references** in each case. |

After these deadlines have passed, the parties will abide by the narrowing schedule set forth in the Eastern District of Texas's Model Order. The parties must also file by April 14, 2025, a joint notice with the Court with proposed deadlines for the scheduling order and the parties' positions on whether the Court should hold a joint *Markman* hearing for all four cases.

## I. THE PARTIES' ARGUMENTS

Citing "the extraordinary burden of preparing invalidity contentions and claim construction arguments for over 1,100 claims," (Dkt. #44 at 6), Defendants propose the following resolution:

- At the deadline for Disclosure of Asserted Claims and Infringement Contentions under P.R. 3-1, Morris Routing shall serve a Preliminary Election of Asserted Claims that shall assert no more than 60 claims per Defendant.

- At the deadline for Invalidity Contentions under P.R. 3-3, each Defendant shall serve a Preliminary Election of Asserted Prior Art, each of which shall assert no more than 70 references.

(Dkt. #44 at 13).

Claim narrowing after these deadlines would then follow the Court's Model Order. (Dkt. #44 at 13). And to mitigate any due-process concerns raised by Morris Routing, Defendants propose allowing either party to move the Court to "add additional claims [or references] that present a distinct issue upon a showing of good cause." (Dkt. #44 at 14).

Morris Routing, by contrast, requests "an initial limit of 280 claims in each case." (Dkt. #45 at 8), This limit, according to Morris Routing, is sufficient to avoid divesting its intellectual-property rights without due process and simply adopts the approach taken by this Court in *Headwater Rsch. LLC v. Verizon Comm'ns, Inc.* No. 2:23-CV-352 (E.D. Tex. May 29, 2024), ECF No. 68. Along with this narrowing of claims, Morris Routing also agreed "(1) to additional time in the schedule for Defendants' P.R. 3-3 and 3-4 disclosures; (2) to narrow the number of asserted claims to 32 at the close of claim construction discovery; and (3) further to narrow claims

4

before serving opening expert reports, all in accordance with this District's Model Order." (Dkt. #45 at 9). Morris Routing's briefing does not address whether the Court should limit the Defendants to a specific number of prior-art references. As to the efficiencies of early claim narrowing, Morris Routing disagrees with Defendants. In fact, Morris Routing suggests that "early claim culling before discovery completion [can] trigger[] excessive motion practice, draining judicial resources and burdening parties." (Dkt. #45 at 20).

To summarize, the parties disagree about only one issue: how many asserted claims Morris Routing should be limited to at the initial-contentions stage.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 1 reminds federal courts that the rules should be "construed, administered, and employed" to "secure the just, speedy, an inexpensive determination of every action and proceeding." Over the past few decades, however, the cost of patent litigation skyrocketed.[4] One factor contributing to these costs was "the number of asserted claims, claim terms, and prior art references in patent cases are often problematically excessive."[5] To address this problem, the Federal Circuit's Advisory Council issued a model order in 2013, recommending that district courts deploy a phased approach to narrow asserted

---

[4] *E.g.*, John R. Allison et al., *Patent Litigation and the Internet*, 2012 STAN. TECH. L. REV. 1, 1 (2012) ("Patent infringement litigation has not only increased dramatically in frequency over the past few decades, but also has also seen striking growth in both stakes and cost." (internal footnote omitted)).

[5] Advisory Council for the United States Court of Appeals for the Federal Circuit, *A Model Order Limiting Excess Patent Claims and Prior Art*, 1 (2013), https://patentlyo.com/media/docs/2013/07/model-order-excess-claims.pdf.

5

claims and references as a case progresses.[6] The Eastern District of Texas adopted that order in 2013 with only minor changes. *See* General Order No. 13-20, General Order Adopting Model Order Focusing Patent Claims and Prior Art to Reduce Costs (E.D. Tex. Oct. 29, 2013) (the "Model Order"). It remains in place today.

As adopted, the Model Order addresses claim and reference narrowing twice during litigation: (1) after claim-construction discovery is completed but before claim construction, and (2) after claim construction has ended but before expert reports. *Id.* at 3–4. At the first narrowing, the patentee must serve a "Preliminary Election of Asserted Claims" that asserts "no more than ten claims from each patent and not more than a total of 32 claims." *Id.* at 3. In response, the defendant must serve a "Preliminary Election of Asserted Prior Art" that asserts "no more than twelve prior art references against each patent and not more than a total of 40 references." *Id.* At the second narrowing, final elections are made by each side: the patentee is limited to "no more than five asserted claims per patent . . . and no more than a total of 16 claims"; the defendant, by contrast, is limited to "no more than six asserted prior art references per patent . . . and no more than a total of 20 references." *Id.* at 4.

The Model Order does not, however, address claim and reference narrowing before discovery. Of course, the district court has the inherent authority to perform such narrowing "so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (quotations omitted); *see also Midwest Athletics & Sports All., LLC v. Xerox Corp.*,

---

[6] *Id.* at 6–7.

No. 6:19-CV-6036, 2020 WL 10458196, at *7 n.12 (W.D.N.Y. Feb. 3, 2020) (collecting cases in which district courts exercised this authority "to narrow claims where the number of claims is infeasible or unmanageable for trial or dispositive motions"). Indeed, the Federal Circuit signed off on the district court's use of pre-discovery claim narrowing in *In re Katz Interactive Call Processing Pat. Litig.*, 639 F.3d 1303, 1312–13 (Fed. Cir. 2011). In short, whether before discovery or on the eve of trial, the district court may impose reasonable limits on asserted claims.

### III. DISCUSSION

Federal Circuit precedent, relevant decisions from this District, and the factors identified in the Model Order all support reducing the number of claims asserted by Morris Routing.

*Katz* is particularly instructive. The plaintiff there asserted "a total of 1,975 claims from 31 patents" against numerous defendants. *In re Katz*, 639 F.3d at 1309. In response to several requests to limit the number of asserted claims, the district court required the plaintiff to "select no more than 40 claims per defendant group, and after discovery to narrow the number of selected claims to 16 per defendant group." *Id.* To ensure the plaintiff's due-process rights were protected, the court permitted the plaintiff "to add new claims if they raised issues of infringement/validity that were not duplicative of previously selected claims." *Id.* (cleaned up). The plaintiff never moved to add new claims back. Instead, it moved to sever and stay the non-selected claims, which the district court denied. *Id.* at 1310.

7

The plaintiff challenged this denial on appeal, claiming that it violated the plaintiff's due-process rights. *Id.* The Federal Circuit disagreed, concluding that the plaintiff had failed to show that "the claim selection procedure the district court employed was inadequate to protect Katz's rights with respect to the unasserted claims." *Id.* at 1311. The court explained that requiring the plaintiff to identify unasserted claims raising "separate legal issues from those raised by the asserted claims" was "both efficient and fair." *Id.* at 1312. And, although the *Katz* court noted that a district court's decision to limit claims could "be subject to review and reversal," it indicated that such a reversal would be appropriate only when a district court refused to allow a plaintiff to re-assert claims after showing good cause. *Id.* at 1313.

Guided by *In re Katz*, courts in this District have often ordered early claim narrowing, including before discovery. *Oasis Rsch., LLC v. Adrive, LLC*, No. 4:10-CV-435, 2011 WL 7272473, at *2 (E.D. Tex. Sept. 13, 2011) (ordering pre-discovery claim narrowing); *Unified Messaging Sols. LLC v. Facebook, Inc.*, No. 6:11-CV-120, 2012 WL 11606516, at *1 (E.D. Tex. July 12, 2012) (ordering pre-*Markman* claim narrowing); *Headwater Rsch. LLC*, ECF No. 68 (ordering pre-*Markman* claim narrowing).

The Model Order provides further guidance, listing relevant factors for courts to consider when narrowing claims: "the commonality among asserted patents, the number and diversity of accused products, the complexity of the technology, the complexity of the patent claims, and the complexity and number of other issues in the

8

case that will be presented to the judge and/or jury." Model Order at 3. And "[i]n general, the more patents in the case, the lower the per-patent limits should be." *Id.*

Both parties here believe that *Katz* supports their position and that the complexity of the case favors their suggested claim narrowing. Defendants, for example, suggest that *Katz* is "instructive as to an appropriate approach to claim narrowing under remarkably similar circumstances." (Dkt. #44 at 4–5). Defendants further contend that claim narrowing is necessary given "the complexity of the issues raised by each of the patents and claims." (Dkt. #44 at 4). To illustrate this complexity, they point to "dependent claim 45 of U.S. Patent No. 10,389,625," which "spans nearly five full columns of text." (Dkt. #44 at 12). Defendants also note how "[m]any other claims are longer than one full column." (Dkt. #44 at 12). In Defendants' view, matters are made worse in this case and the Related Cases because although "segment routing technology underlies the asserted claims in all four cases," "Morris Routing selected an almost entirely unique set of patents to assert against each Defendant." (Dkt. #44 at 11). Defendants thus believe that limiting Morris Routing to sixty claims in each case is appropriate to avoid the undue burden of preparing invalidity charts for 280 claims—estimated to require about "2,800 attorney hours." (Dkt. #44 at 8).

Morris Routing, by contrast, believes that sixty asserted claims per case is too few and would impinge on its "ability to assert its property rights at the preliminary contentions stage." (Dkt. #45 at 6). Morris Routing avers that, while the number of claims may be high, its "diverse family of patents" has "claims directed to a wide

9

variety of [segment routing] implementations." (Dkt. #45 at 10). For example, Morris Routing suggests that the asserted claims "vary based on" several factors, including "data plane (e.g., MPLS versus IPv6), identifier type, and topology—as well as by claim type (e.g., system versus method) and issue date (2019 to 2024)." (Dkt. #45 at 10). It also discusses several "unique issues" related to damages, infringement, and type of identifier recited by each claim. (Dkt. #45 at 16–17). And while some information Morris Routing needs to decide which claims to pursue is publicly available, much of it is known to only Defendants. (Dkt. #45 at 15). Under the circumstances, Morris Routing maintains that limiting its claims "before it receives this information," would "unfairly prejudice[] [its] ability to fully prepare and present its case." (Dkt. #45 at 14). In support, Morris Routing points to language in *Katz* suggesting that premature claim narrowing may deny "the plaintiff the opportunity to determine whether particular claims might raise separate issues of infringement or invalidity in light of the defendants' accused products and proposed defenses," which "risks review and reversal." (Dkt. #45 at 7) (citing *In re Katz*, 639 F.3d at 1313 n.9).

To begin with, the Court finds that *Katz* supports Defendants, not Morris Routing. In *Katz*, the Federal Circuit held that the district court's decision to narrow "1,975 claims from 31 patents" to "no more than 40 claims per defendant group" before discovery was "both efficient and fair." *In re Katz*, 639 F.3d at 1313. The Court similarly finds here that narrowing Morris Routing from 1,970 claims from thirty-two patents to no more than sixty claims per defendant group would be both efficient

10

and fair. And while Morris Routing makes hay out of *Katz*'s admonition that an early narrowing of claims could be improper in certain circumstances, those circumstances do not exist here. As with the district court in *Katz*, this Court will similarly allow Morris Routing to add claims back upon a showing of good cause. But even if that weren't the case, the Federal Circuit's review-and-reversal admonition is nonbinding dicta.

Morris Routing cites to two other cases in which courts in this District denied Defendants' claim-narrowing request as improper. *Allergan, Inc. v. Teva Pharms. USA*, No. 2:15-CV-1455, 2017 WL 373462 (E.D. Tex. Jan. 26, 2017); *Cognipower LLC v. Samsung Elecs. Co.*, No. 2:23-CV-160 (E.D. Tex. Oct. 6, 2023), ECF No. 62. Both cases rely on the same dicta from *Katz*. Both cases also had far fewer asserted claims than the 1,970 claims Morris Routing currently asserts or the 1,180 claims it offers to reduce to. *Allergan, Inc.*, 2017 WL 373462 (126 claims); *Cognipower LLC*, ECF No. 62 (193 claims). The Court therefore finds that both cases are inapposite and unpersuasive.

The Court also disagrees that *Headwater* supports Morris Routing's ability to proceed with 280 claims per case. (Dkt. #45 at 8). Quite the opposite. After noting that the case "cannot proceed through claim construction with 281 asserted claims," *Headwater Research*, ECF No. 68 at 1, the Court required the plaintiff to reduce its claims down to "no more than ten claims from each patent and not more than a total of 32 claims." *Id.* at 2. So what *Headwater* really did was (1) affirm the limits imposed

11

by the Court's Model Order and (2) deny the plaintiff's attempt to proceed with 280 claims. Neither action supports Morris Routing's requested relief here.

The relevant factors suggested by the Model Order also support Defendants' proposed narrowing. For example, the patents have significant overlap. Indeed, Morris Routing's pleadings support this deduction. Across all four cases, the First Amended Complaints use nearly *identical* language to describe the patented inventions, the relevant field of technology, and the industry standards that support its infringement positions. Even more telling is the number of patents that have terminal disclaimers: at least thirteen[7] by the Court's count—about 40% of the asserted patents. *In re Katz*, 639 F.3d at 1311 ("The district court noted that by providing examples of duplicative claims and pointing out the common genealogy of [the plaintiff's] patents and the terminal disclaimers in almost all of them, the defendants had made 'a convincing showing that many of the claims are duplicative.'"). Taken together, the patents share significant commonalities, which belies Morris Routing's suggestions of a "diverse family of patents" directed at a "wide variety" of segment-routing implementations.

Defendants also provide specific examples of how complex the asserted claims are, citing a five-column-long dependent claim, among other unusually long dependent claims. Similarly complex is the technology—segmented routing—which is why the Court has appointed a technical advisor. And while Morris Routing claims

---

[7] This includes U.S. Patent Nos. 10,382,327, 10,389,624, 10,389,625, 12,058,042, 10,411,998, 10,397,100, 10,404,583, 10,476,788, 10,594,594, 10,721,164, 11,196,660, 11,012,344, and 10,411,997.

that it has several unique issues related to damages and infringement, its First Amended Complaints have identical claims for relief.

To be sure, there could be different issues for trial in each case. But as all parties have agreed to follow the Model Order going forward, Morris Routing may present no more than sixteen claims at trial. And if it plans to assert all patents at trial, then Morris Routing can retain no more than one or two claims per patent. A limit of sixty claims—about six claims for each asserted patent—is reasonable, reduces costs, and conserves judicial resources. *See, e.g., Unified Messaging Sols. LLC*, 2012 WL 11606516, at *1 ("Narrowing the case at an earlier stage will serve to reduce the overall costs of the litigation by eliminating needless discovery regarding issues that will likely be dropped prior to trial, and allow the Court to dedicate its resources to the truly dispositive and meritorious issues.").

Finally, any prejudice alleged by Morris Routing is remedied by allowing it to re-assert claims upon a showing of good cause.[8]

## IV. CONCLUSION

For the reasons above, in this case and for each of the Related Cases, Plaintiff Morris Routing Technologies, LLC is **ORDERED** to serve, by the P.R. 3-1 and 3-2 deadline, a Preliminary Election of Asserted Claims with no more than sixty claims per Defendant.

---

[8] Morris Routing is asserting all claims of the thirty-two patents at issue. Although Morris Routing must elect only sixty claims to pursue in each case, its ability to re-assert any claim means that this Court retains jurisdiction over all claims during the pendency of this action. *See Ameranth Inc. v. Domino's Pizza, LLC*, 792 F.App'x 780, 784 (Fed. Cir. 2019). Defendants' counterclaims for declaratory judgments of non-infringement and invalidity as to all claims of certain patents are therefore proper.

It is further **ORDERED** that Defendant AT&T, and each Defendant in the Related Cases, shall serve, by the P.R. 3-3 and 3-4 deadline, a Preliminary Election of Asserted Prior Art with no more than seventy references.

It is further **ORDERED** that the parties in this case and the Related Cases shall, moving forward, comply with the additional claim-narrowing deadlines and limits set forth in the Eastern District of Texas's Model Order.

It is further **ORDERED** that the parties in this case and the Related Cases shall file by **April 14, 2025**, a joint notice to the Court with proposed deadlines for the scheduling order to be entered in each case and the parties' positions on whether the Court should hold a joint *Markman* hearing for all four cases.

**So ORDERED and SIGNED this 2nd day of April, 2025.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE